UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| COREY TAYLOR, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 3:21-cv-00941 |
| J. HARRIS, et al., | ) ) ) | Judge Trauger |
| Defendants. | ) | |

**MEMORANDUM**

Corey Taylor, an inmate at the Davidson County Sheriff's Office (DCSO) in Nashville, Tennessee, filed a pro se civil rights complaint under 42 U.S.C. § 1983 (Doc. No. 1) and an application to proceed as a pauper. (Doc. No. 2.) The complaint is before the court for initial review under the Prison Litigation Reform Act.

**I.  Application to Proceed as a Pauper**

The court may authorize a prisoner to file a civil suit without prepaying the filing fee. 28 U.S.C. § 1915(a). The plaintiff's application to proceed as a pauper (Doc. No. 2) reflects that he cannot pay the full filing fee in advance, so the application will be granted. The $350.00 filing fee will be assessed as directed in the accompanying order. 28 U.S.C. § 1915(b).

**II.  Initial Review**

The court must dismiss the complaint if it is frivolous or malicious, fails to state a claim, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); 42 U.S.C. § 1997e(c)(1). The court must also liberally construe pro se pleadings and hold them to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### A. Allegations

The plaintiff alleges that he is a convicted state prisoner at DCSO. (Doc. No. 1 at 2.) Around 5:25 a.m. on November 11, 2021, the plaintiff asked Officer J. Harris "if he could please stop talking and pass out breakfast trays to prevent them from getting cold." (*Id.* at 3.) Officer Harris responded, "Man suck my dick." (*Id.*)

Around 7:00 p.m. on November 13, 2021, Lieutenant Paul Manyok brought the plaintiff to a conference room to investigate the incident with Officer Harris. (*Id.*) The plaintiff wrote his account of the incident on a piece of paper. (*Id.* at 3–4.) Lt. Manyok read the paper, removed the plaintiff from the conference room, and "hesitated for a split second" in a way that "seemed to be malicious" to the plaintiff. (*Id.* at 4.) The plaintiff asked to return to his cell to use the restroom, and after Lt. Manyok "hesitated yet again," the plaintiff asked if he did something wrong. (*Id.*) Lt. Manyok responded that, as a matter of policy, he would have to place the plaintiff in segregation because the plaintiff's account constituted a PREA complaint.[1] (*Id.*) Lt. Manyok sought to speak with his supervisor, Chief of Custody Timothy Dial, but his supervisor was not there. (*Id.*)

The plaintiff was scared and intimidated by the prospect of being placed in segregation, where he would have one hour of recreation per day (compared to 6 hours per day in general population), including shower and phone time, and he would be forced to wear handcuffs, a belly chain, and leg shackles while outside his cell. (*Id.*) Lt. Manyok stated that the plaintiff could "drop the complaint and file an informal grievance," or he could "go to restrictive housing." (*Id.* at 5.) The plaintiff "asked to be given the paper [he] wrote [his] complaint on and asked [a] nurse if she could shred it in [the plaintiff's] presence." (*Id.* at 4.)

---

[1] PREA stands for the Prison Rape Elimination Act, a law enacted by Congress "to prevent prison rape and to 'protect the Eighth Amendment rights of Federal, State, and local prisoners.'" *Does 8–10 v. Snyder*, 945 F.3d 951, 955–56 (6th Cir. 2019) (quoting 34 U.S.C. § 30302).

2

Twice on November 30, 2021, and again on December 3, 2021, the plaintiff spoke with Chief Dial, who said the investigation into the plaintiff's complaint against Officer Harris was complete. (*Id.* at 5–6.) Chief Dial stated that Harris's comment was "totally unacceptable," and that Harris would "be dealt with," but that "the matter is not one warranting a PREA." (*Id.* at 6.) Chief Dial told the plaintiff that he would not provide the plaintiff with "documentation of his findings," but he would "log it in the computer." (*Id.*)

The plaintiff brings this action against Officer Harris, Lt. Manyok, Chief Dial, Sheriff Daron Hall, Davidson County, and the Davidson County Sheriff's Office. (*Id.* at 1.) The plaintiff seeks monetary damages, an order requiring all DCSO staff to wear body cameras, and an audit of DCSO to ensure compliance with the PREA. (*Id.* at 1–2, 7.)

**B.     Legal Standard**

To determine whether the complaint fails to state a claim for the purpose of initial review, the court applies the Rule 12(b)(6) standard. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). The court therefore accepts "all well-pleaded allegations in the complaint as true, [and] 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)). An assumption of truth does not extend to allegations that consist of legal conclusions or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

**C.     Analysis**

"There are two elements to a [Section] 1983 claim. First, a plaintiff must allege that a defendant acted under color of state law. Second, a plaintiff must allege that the defendant's

conduct deprived the plaintiff of rights secured under federal law." *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 539 (6th Cir. 2012) (citation omitted).

### 1. Dismissal of DCSO

The plaintiff names the DCSO as a defendant because it is alleged to be the employer of certain individuals named in the complaint. (Doc. No. 1 at 7.) But "police departments and sheriff's departments are not proper parties" under Section 1983. *See Mathes v. Metro. Gov't of Nashville and Davidson Cnty.*, No. 3:10-cv-0496, 2010 WL 3341889, at *2 (M.D. Tenn. Aug. 25, 2010) (collecting cases). Accordingly, DCSO will be dismissed as a party.

### 2. Dismissal of Chief Dial and Sheriff Hall

The plaintiff sues Sheriff Hall because he is the "head of [the] jail" (Doc. No. 1 at 7), and Chief Dial for allegedly failing to supervise, train, and follow DCSO policies. (*Id.* at 5–6.) "Section 1983 liability must be premised on more than . . . the right to control one's employees." *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009) (citing *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). "A supervisory official's failure to supervise, control or train [an] offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Jones v. Clark Cnty., Ky.*, 959 F.3d 748, 761 (6th Cir. 2020) (quoting *Shehee*, 199 F.3d at 300).

Here, Plaintiff does not make any specific allegations of personal involvement by Sheriff Hall, and Chief Dial's alleged participation is limited to the failure to act in response to the plaintiff's complaint against Officer Harris. That is an insufficient level of participation to impose liability under Section 1983. *See Jones*, 959 F.3d at 761 (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)) ("Supervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act."). The plaintiff also cannot state a Section 1983 claim

4

against Chief Dial for allegedly failing to follow DCSO policies. *See Laney v. Farley*, 501 F.3d 577, 580 n.2 (6th Cir. 2007) (citation omitted) ("[A] § 1983 claim may not be based upon a violation of state procedure that does not violate federal law."). Accordingly, the plaintiff fails to state a claim against Sheriff Hall and Chief Dial.

### 3. Inappropriate Comment by Officer Harris

The plaintiff asserts an Eighth Amendment claim against Officer Harris for allegedly telling the plaintiff, "Man suck my dick." (Doc. No. 1 at 3.) The Sixth Circuit has repeatedly stated that "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) (quoting *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987)). Officer Harris's alleged comment is "shameful and utterly unprofessional," but it does not rise to the level of an Eighth Amendment violation. *See Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (citing *Ivey*, 832 F.2d at 954–55) (holding that "harassment and verbal abuse," including "aggravating" and "insulting remarks," does "not constitute the type of infliction of pain that the Eighth Amendment prohibits"); *see also Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) (quoting *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000)) ("Johnson's allegation that Ward made an offensive sexual remark to him does not rise to the level of a constitutional violation [as such is merely verbal abuse]."). Accordingly, the plaintiff fails to state a claim against Officer Harris.

### 4. Threat to Move the Plaintiff to Segregation

The plaintiff asserts a First Amendment retaliation claim based on Lt. Manyok allegedly threatening to move him to segregation, in accordance with jail policy, because the plaintiff's complaint against Officer Harris implicated the PREA. (Doc. No. 1 at 4–5.) To state a First

5

Case 3:21-cv-00941   Document 5   Filed 01/05/22   Page 5 of 7 PageID #: 26

Amendment retaliation claim, "a prisoner must prove that (1) he engaged in protected conduct, (2) the defendant took an adverse action that is capable of deterring a person of 'ordinary firmness from continuing to engage in that conduct,' and (3) 'the adverse action was motivated at least in part by the [prisoner's] protected conduct.'" *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999)).

The complaint states an arguably non-frivolous retaliation claim against Lt. Manyok. First, the plaintiff engaged in protected conduct by reporting Officer Harris's abusive comment. *See id.* (quoting *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)) ("[P]rotected conduct includes a prisoner's 'undisputed First Amendment right to file grievances against prison officials on his own behalf.'"). Second, Lt. Manyok's threat to transfer the plaintiff to segregation for pursuing a PREA complaint is a sufficiently adverse action. *See id.* at 475 (citations omitted) ("Being threatened with a transfer to a more restrictive living environment with fewer privileges would deter a person of ordinary firmness from exercising the constitutional right to file grievances."). And third, the plaintiff alleges that the threatened transfer was causally connected to his complaint against Officer Harris.

The complaint also states an arguably non-frivolous retaliation claim against Davidson County. To state a claim against a municipality like Davidson County, the plaintiff must allege that he "suffered a constitutional violation" and that the County's "policy or custom directly caused the violation." *Hardrick v. City of Detroit, Mich.*, 876 F.3d 238, 243 (6th Cir. 2017) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690–92 (1978)). The plaintiff alleges that Lt. Manyok said he was acting in accordance with jail policy when he threatened to transfer the plaintiff to segregation if he pursued a PREA complaint. The court liberally construes this as an allegation that Davidson County has a policy of requiring all PREA grievants to be housed in

6

Case 3:21-cv-00941  Document 5  Filed 01/05/22  Page 6 of 7 PageID #: 27

segregation or restrictive housing. For the purpose of initial review, that is sufficient to allege that Davidson County's policy caused the asserted constitutional violation.

### 5. Dismissal of Official-Capacity Claims

The plaintiff brings this action against the defendants in their individual and official capacities. (Doc. No. 1 at 2.) The individual-capacity claims have been addressed above. Official-capacity claims are equivalent to claims against the entity that a defendant represents. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)) ("[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent."). As DCSO employees, the individual defendants represent Davidson County. Because Davidson County remains as a defendant, the plaintiff's official-capacity claims against the individual defendants will be dismissed as redundant. *See J.H. v. Williamson Cnty., Tenn.*, 951 F.3d 709, 723 n.4 (6th Cir. 2020) (citing *Foster v. Michigan*, 573 F. App'x 377, 390 (6th Cir. 2014)) ("The district court correctly dismissed these official capacity claims as superfluous of the claim against the county.").

## III. Conclusion

For these reasons, the court concludes that the plaintiff states arguably non-frivolous First Amendment retaliation claims against Lt. Manyok in his individual capacity and Davidson County. These claims will be referred to the Magistrate Judge for further proceedings consistent with the accompanying order, and all other claims and defendants will be dismissed.

_____
ALETA A. TRAUGER
United States District Judge